UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE IVERSON, individually, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRAINTREE PROPERTY ) <br> ASSOCIATES, L.P., ) <br> ) <br> Defendant. ) <br> ) | Case No. 04-cv-12079-NG |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(C)**

Plaintiff's law firm has a long history of sanctions by courts in Florida because of its practices of conducting unnecessary discovery that needlessly hike-up attorneys fees, filing baseless complaints, and neglecting to perform basic pre-suit investigations. Plaintiff's law firm, Fuller & Fuller, now attempts to do the same in this Court.

In this Title III accessibility case, Plaintiff's counsel has already retained an expert witness who flew from Miami to Boston to examine the shopping mall at issue for potential Title III violations. This expert, Mr. William Norkunas, examined the property and issued his Rule 26(a)(2) report. In fact, Defendant Braintree Property Associates ("Braintree") has provided Plaintiff with its expert report as well.

Now, solely for the purpose of driving up fees, Plaintiff's counsel has informed Braintree that Mr. Norkunas must return to the property to continue his examination of the shopping mall. But because Mr. Norkunas has already been afforded full opportunity to examine the mall, Braintree is entitled to a protective order under Fed. R. Civ. P. 26(c)

to prevent Plaintiff's law firm's long-standing practice of producing excessive fees and costs.

A.   **Background Facts.**

    1.   **Plaintiff's law firm's history with burdening courts and parties with costly and unnecessary discovery.**

This is not Plaintiff's law firm's first attempt to drive up fees and costs through wholly unnecessary discovery and frivolous complaints. In fact, in 2003, Plaintiff's firm, Fuller & Fuller, was sanctioned in federal court by the Southern District of Florida. The court cited Fuller & Fuller's practice of failing to perform adequate pre-suit investigation, coupled with the sheer number of Title III cases filed by the firm since 1999 – over 600 cases. See Sanctions Order, Access for America, Inc. v. Speedway Superamerica, LLC, 01-CIV-14300 (S.D. Fla. 2003), attached as **Exhibit A**, at 6.

In many of the cases filed in Florida, Fuller & Fuller used the same named plaintiff – John McNeilly. The problem for Fuller & Fuller, however, was that Mr. McNeilly was *not* disabled under the meaning of Title III or the Americans With Disabilities Act ("ADA"). See id. at 1 (noting how Fuller & Fuller's complaints alleged that Mr. McNeilly was a quadriplegic); id. at 2 ("McNeilly did not know what a quadriplegic was, and when the term was explained to him, he was repulsed by the thought of being so incapacitated . . . .").

For failing to perform a basic investigation, filing baseless complaints, and driving up their own costs, the court ordered Fuller & Fuller to repay the defendants' attorneys fees. See id. at 18. Additionally, the court appointed for one year a special master to "review all complaints filed by Fuller and his firm, and be provided whatever support is necessary, to ensure that proper pre-suit investigation has been conducted." Id.

2

These sanctions, said the court, will "hopefully deter repetition of this type of activity by Fuller and all other attorneys representing disability advocacy groups." Id.

2.  **Plaintiff's expert visited and fully examined the property at issue.**

Mr. William Norkunas, Plaintiff's expert, previously visited the South Shore Plaza Mall (the "Property"). This was not a social trip for Mr. Norkunas. Rather, he visited the Property solely to determine if any aspects are not Title III-compliant. See Plaintiff's Rule 26(a)(2) Expert Witness Disclosure, attached as **Exhibit B**, at 1 ("The subject matter of his opinion testimony will be to identify the ADA violations on the property.").

Mr. Norkunas does not live in the Boston area. He does not even live in the Commonwealth of Massachusetts. Rather, Plaintiff's counsel flew him up from the Miami area for the sole purpose of examining the Property. And this is exactly what he did – examine the Property. At no time did Defendant in any way interrupt, place a time restriction on, ask him to leave, or otherwise disturb Mr. Norkunas while he investigated the Property.

3.  **Plaintiff's expert issued his Rule 26(a)(2) report.**

Based upon his review of the Property, Mr. Norkunas issued his official Rule 26(a)(2) expert report detailing each of what he perceived to be Title III violations found at the Property. See id. This report not only details 41 alleged violations, but also cites the specific sections of the ADA that Mr. Norkunas believes Defendant violated with regard to each allegation. See, e.g., id. at ¶ 1 ("In this parking area, there are insufficient number of spaces designated for disabled use, in violation of Sections 4.1.2 and 4.6.1 of the ADAAG.").

3

    **4.**    **Braintree has provided, and Mr. Norkunas has reviewed Braintree's expert report.**

On or about March 3, 2005, Braintree provided to Plaintiff its expert report regarding the Title III compliance of the Property. Braintree also provided Plaintiff's counsel with site plans. Braintree's report contained detailed photographs and descriptions of every potentially Title III-violative aspect of the Property.

After Mr. Norkunas received this report, Defendant's counsel asked Plaintiff's counsel for Mr. Norkunas' opinions on the report. Plaintiff's counsel simply stated, "My expert does not like it." Plaintiff's counsel would not say *why* Mr. Norkunas did not "like" the report. Instead, he stated that Mr. Norkunas would only be able to answer *why* upon re-visiting the Property. Plaintiff's counsel did indicate he would consider commenting on Braintree's report if Braintree's counsel would present him with a "package deal" that included an unsubstantiated amount of attorneys' fees and costs.

Braintree's expert report is specific, unambiguous, and easily understandable. No *valid* reason exists why Mr. Norkunas must be re-flown to Boston to re-examine the Property for which he already issued a detailed report. Similarly, no valid reason exists as to why Mr. Norkunas (along with any other minimally-competent expert in this field) must revisit the Property in order to fully understand and opine upon Braintree's expert report. The *only* reason why Plaintiff's counsel insists on this second visit to the Property is to drive up his fees. Relief is therefore appropriate under Rule 26(c).

4

**II.     Because Plaintiff's expert has already fully examined Defendant's property, Plaintiff's counsel has no reason for his expert to re-enter the property, except to unduly burden Defendant and inflate his fees.**

This Court should prohibit Plaintiff's expert, Mr. Norkunas, from entering onto Braintree's Property because he has already fully conducted his investigation, and because any further investigation is simply unnecessary. This circuit has long followed the Supreme Court's mandate that district courts "have broad discretion" to decide "when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). The First Circuit has often stated that "district judges need wide latitude in designing protective orders, and the Federal Rules of Civil Procedure reflect that approach." Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993). Rule 26(c) "*generously permits* for good cause shown" any order needed to protect "against annoyance, embarrassment, or undue burden occasioned by discovery." Id. (emphasis added).

Here, Plaintiff's expert has already had one bite at the apple, and that is all he is entitled to. This case centers around whether the facilities of the Property in question are Title III-compliant. Both Plaintiff's expert report, alleging 41 specific violations (complete with citations to specific code sections), and Defendant's report, complete with photographs and detailed descriptions of *every* potential violation, sufficiently allow both parties' experts to opine on this ultimate issue.

Plaintiff's expert has had his chance to examine the Property – it is not Defendant's responsibility to ensure that Mr. Norkunas performed his investigation adequately. While Plaintiff's counsel claims that Mr. Norkunas failed to properly investigate the Property during his first visit, Braintree need not allow re-entry for Mr.

Norkunas to do the job he should have previously done. Braintree relied on Mr. Norkunas' Rule 26(a)(2) report in preparing its own report. And nothing in Braintree's report raised any "new" or "hidden" issues that would require Mr. Norkunas to revisit the Property. Simply put, Plaintiff and his expert have been afforded a full and fair opportunity to investigate the Property.

In the four-year period between 1999 and 2003, Plaintiff's law firm has filed over 600 of these Title III cases, and Fuller & Fuller is notorious for its conduct in managing these cases. This law firm has been severely sanctioned by a Florida court for its "at best, extremely sloppy legal work, and at worst, deliberately fraudulent filings." Sanctions Order, **Exhibit A**, at 2-3. Here, Plaintiff's counsel has *no* valid reason to fly Mr. Norkunas up to Massachusetts to "inspect" the Property that he already had a full and uninterrupted chance to examine. The *only* reason for Plaintiff's request is to drive up fees. Under these circumstances, the Court should grant Defendant's motion for a protective order and hold that Mr. Norkunas may not enter Defendant's property for the remainder of this case.

III.   **Conclusion.**

For the foregoing reasons, Defendant Braintree Property Associates, L.P. respectfully requests that the Court grant its motion for protective order and prohibit Mr. William Norkunas from entering onto Defendant's property until the case is resolved.

Respectfully submitted,

BRAINTREE PROPERTY ASSOCIATES, L.P., a Massachusetts limited partnership

By its attorneys,

/s/ Jennifer Martin Foster
Jennifer Martin Foster (BBO #644796)
Greenberg Traurig, LLP
One International Place
Boston, MA 02110
(617) 310-6000

Co-Counsel:
Brian C. Blair, Esq.
Greenberg Traurig, P.A.
450 S. Orange Ave., Ste. 650
Orlando, FL  32801
(407) 420-1000

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via U.S. Mail and e-mail to **O. OLIVER WRAGG, ESQ.**, Fuller, Fuller & Associates, P.A., 12000 Biscayne Boulevard, Suite 609, North Miami, Florida 33181, this 10 day of March, 2005.

/s/ Jennifer Martin Foster
Jennifer Martin Foster

bos-srv01\FOSTERJE\159707v01\4R_R01_.DOC\3/10/05\83064.010100