IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GEORGE IVERSON, Individually,

                                                    CASE NO.: 04-cv-12079-RWZ

            Plaintiffs,

v.

BRAINTREE PROPERTY
ASSOCIATES, L.P.,

            Defendant.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION FOR PROTECTIVE ORDER

Plaintiff, George Iverson, herein files this response to Defendant's Motion for Protective

Order, and states as follows:

1. Defendant's Motion for Protective Order is predicated on the inaccurate conclusion

that the Rule 34 Inspection is overly broad and unduly burdensome with respect to the scope of

its inspection. Plaintiff respectfully disagrees.

2. **Defendant is precluded from challenging inspection.** On March 10, 2005,

Defendant filed a first Motion for Protective Order seeking to prevent Plaintiff's expert from

inspecting Defendant's property known as Braintree South Shore Plaza (the "Mall") [DE 9].

Defendant alleged that because Plaintiff's expert had performed a pre-suit inspection of the

property and issued a Rule 26(a)(2) report, he should not be entitled to perform a Rule 34

inspection. On March 13, 2005, the Court denied Defendant's Motion for Protective Order [DE

12] and held that "it is not unreasonable for the expert to seek to re-visit the area after reviewing

the defendant's expert's response."

Plaintiff had requested a Rule 34 inspection initially on December 23, 2004 (attached as

Exhibit 1). In that request, Plaintiff sought to inspect on January 24, 2005 almost all areas of the

Mall including at paragraph 5 "any and all areas of the pubic accommodation, excepting only

work areas used exclusively by employees, which include, but are not limited to, all tenant spaces

in a shopping center...and all common areas of the public accommodation." Upon receiving no

response from Defendant, Plaintiff issued a Rule 34 Inspection Re-notice to Defendant on

February 10, 2005 requesting an inspection on March 12, 2005 (see Exhibit 2).  Defendant

scheduled an inspection with Plaintiff but then filed a Motion for Protective Order, thereby

cancelling the inspection.  After the Court denied Defendant's Motion, Plaintiff's issued a

Second Re-notice to Defendant on May 18, 2005 requesting a June 1, 2005 Inspection (see

Exhibit 3). This notice listed the specific tenant stores to be inspected. Again Defendant failed to

cooperate in this inspection and Plaintiff issued a Third Re-notice on May 31, 2005 requesting an

Inspection on June 3, 2005 (see Exhibit 4). An inspection of the common areas, but not the retail

tenants, of the Mall was conducted on June 3, 2005.

Defendant's March 10, 2005 Motion for Protective Order, while seeking to prevent

Plaintiff from inspecting the property under a Rule 34 Inspection, failed to make any of the

objections found in its Second Motion for Protective Order at issue here. Based on Plaintiff's

initial Rule 34 Inspection notice issued on December 23, 2004 (Exhibit 1) and the Inspection

notice issued on February 10, 2005 (Exhibit 2), Defendant was on notice as to the scope of

Plaintiff's requested  Inspection, yet failed to object to the scope of it. A Court Order was issued

on the Defendant's first Motion for Protective Order [DE 12].  As such, Plaintiff contends that

Defendant should be precluded from asserting further objections, not purported in its initial

Motion for Protective Order, at this time. Plaintiff further contends that this is simply another

tactic designed by the Defendant to delay the litigation.

   3. **Plaintiff's Response is not overbroad or unduly burdensome.** Plaintiff requests to

inspect the Mall. This property includes the Mall itself, as well as the tenant spaces located

within the Mall. Defendant as the owner and landlord of Braintree Property Associates is

responsible for barrier removal within its' premises including barrier removal within a tenant

space. The ADA provides:

> **(a) General rule.** No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services facilities, privileges,
> advantages, or accommodations of any place of public accommodation by an person
> who **owns, leases (or leases to)**, or operates a place of public accommodation.
> (emphasis added). 42 U.S.C. 12182(a).

   The Department of Justice has issued a regulation interpreting this provision, and

addressing the responsibility of landlords and tenants for ADA compliance, as follows:

> *Landlord and tenant responsibilities.* Both the landlord who owns the building
> that houses a place of public accommodation and the tenant who owns or
> operates the place of public accommodation are public accommodations
> subject to the requirements of this part. As between the parties, allocation of
> responsibility for complying with the obligations of this part may be
> determined by the lease or other contract. 28 CFR § 36.201(b).

   The responsibilities of landlords for ADA violations on their property is further analyzed

in the <u>Department of Justice's American with Disabilities Act Title III Technical Assistance</u>

<u>Manual 3 (1992)</u> and is directly relevant in the case at bar. It notes that "...§ 36.201(b) does not

provide that one party may insulant itself from liability from a third party... at most § 36.201(b)

seems to allow only for indemnification in the event that one party has to make changes that the

other party should have undertaken." Moreover, the Department of Justice in the Manual provides

an example to assist in the interpretation of .§ 36.201(b), which is directly relevant to the case at

bar:

> ...ABC Company leases space in a shopping center it owns to XYZ Boutique. In
> their lease, the parties have allocated to XYZ Boutique the responsibility for
> complying with the barrier removal requirements of [the ADA] within that store.
> In this situation, if XYZ Boutique fails to remove barriers, both ABC Company
> (the landlord) and XYZ Boutique (the tenant) would be liable for violation of the
> ADA and could be sued by an XYZ customer. Of course, in the lease, ABC could
> require XYZ to indemnify it against all losses caused by XYZ's failure to comply
> with its obligations under the lease, but again, such matters would be between the
> parties and would not affect their liability under the ADA.(See Exhibit 5).

Accordingly, and pursuant to the ADA, and its regulations, both the owner/landlord and

the tenant are responsible for non-compliance, and any allocation of responsibility between the

landlord and tenant is effective only between themselves. *Id.* See also Botosan v. Paul McNally

Realty, 216 F.3d 827, 833 (9th Cir. 2000); Independent Living Resources v. Oregon Arena Corp.,

982 F. Supp. 698 (D. Or. 1997); Botosan v. Fitzhugh, 13 F. Supp.2d 1047 (S.D. Calif. 1998);

Association for Disabled Americans v. City of Orlando, 153 F.Supp.2d 1310, 1318 (S.D. Fla.

2001).

Plaintiffs submit that a request to inspect the Mall and the areas within the Mall that the

Defendant is responsible for ensuring are ADA compliant is not overbroad or unduly burdensome.

In fact, the request meets the definition of who may be sued in an ADA action and a request for an

inspection is simply one step in the overall litigation. However, in the interests of moving forward

and cooperation, Plaintiffs have voluntarily limited the number of stores that it will inspect. For

example, Defendants informed the Plaintiff that Sears is independently owned and therefore

should not be inspected as part of this litigation. While Plaintiff does not admit that Sears should

not be inspected, for the sake of moving forward and cooperating, Plaintiff agreed not to inspect

Sears. It should be noted that the ramps and walkways surrounding Sears may be owned by the

Defendant and as such, should be inspected to determine compliance with the ADA. In another example, the Defendant has informed the Plaintiff that the store, Brookstone, is involved in a national ADA class-action lawsuit in which the Plaintiff falls withing the class definition. As such, Defendant contends that Plaintiff cannot not seek to inspect the property. Plaintiff maintains that he has the right to inspect Brookstone, but agreed to not inspect it. In a last example, the Defendant inquired as to Plaintiff's standing for a number of stores, primarily those selling women's apparel and related accessories. Plaintiff contends that he has a right to inspect all of these stores but again in the interest of moving forward and cooperation, Plaintiff agreed to limit his Inspection to fifty-five (55) stores. Clearly just because a store sells women's items does not mean that the Plaintiff, a male, would have no interest in going into those stores. For example, Plaintiff may be shopping with a female companion, may want to buy a gift for a female friend or family member or simply browse in a women's shop for his own reasons.

    4. **Plaintiff not obligated to investigate legal status of Defendant's retail tenants**.
Defendant claims at p. 3 of its Motion that "Plaintiff... failed to investigate whether any of these stores are or have been the subject(s) of national class action lawsuits." Defendant points to a class action lawsuit against Brookstone and claims that it prohibits the Plaintiff from inspecting the store. Defendant states at p. 4 of its Motion, "... any attempt to inspect the Brookstone facility would needlessly increase costs and/or potentially be violative of the Court ordered stay." The Order stays a "prohibition against the filing of separate accessibility actions against Brookstone" (Order Clarifying Order Extending Stay, Defendant's Exhibit C to its Motion). This Order appears in no way to affect the Plaintiff's ability to inspect Brookstone as Defendant's claim. The Plaintiff's present case is not against Brookstone, but against Defendant Braintree Property

Associates, L.P. Further, an inspection is not the same thing as bringing an action. Plaintiff nonetheless, agreed not to inspect Brookstone.

Plaintiff contends that it should not be responsible for investigating the status of class action lawsuits against any of the other retail tenants. As permitted under the ADA, Plaintiff is suing the Defendant Braintree Property Associates, L.P. not the individual retail tenants. In any event, the cost, time and difficulty of investigating fifty-five tenants would be unduly burdensome especially considering that the fact that whether a class action exists may or may not preclude an inspection. Lastly, as owner of the property and lessor of the retail establishments, Defendant is in a far better position to have knowledge regarding lawsuits that would preclude the Plaintiff from inspecting the property of one of its retail tenants.

5. **Scope of Inspection request is appropriate.** Defendant contends that because Plaintiff did not specifically identify the fifty-five stores it wishes to inspect in the Complaint, federal law holds that the inspection request is overbroad. Plaintiffs respectfully disagree. The Federal Rules of Civil Procedure 26(b)(1) define the scope of discovery as "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The Rule does not limit discovery to specifics of the Complaint. A complaint is by definition a notice pleading, where the Plaintiff is required to state only a short and plain statement of their cause of action. The idea is that a Plaintiff, who has a reasonable but not a perfect case can file a complaint to put the Defendant on notice, and then strengthen his case by compelling the Defendant to produce evidence during discovery. This is exactly the idea behind Plaintiff's inspection request.

In its Motion, Defendant cites <u>Macort v. Goodwill Indus.-Manasota, Inc</u>. 200 FRD 377 (M.D. Fla. 2003) in support of its argument that the inspection request is overbroad. Defendant properly points out that in the case, Plaintiffs were not entitled to inspect premises of business for

barriers to access other than those specified in their complaint. The Court relied on Resnick v. Magical Cruise Company, LTD 148 F.Supp. 2d 1298 (M.D. Fla 2001), and outwardly rejected Parr v. L & L Drive-Inn Restaurant, 96 F.Supp.2d 1065 (D.Haw.2000). In Resnick, the Plaintiff did not have standing to bring suit against the Defendant because he had not boarded the Defendant ship before filing the Complaint and did not have enough information to ascertain that the Defendant ship contained barriers to access. In Macort, as well as in the case at bar, both Plaintiffs entered the Defendant's property and personally encountered barriers to access. In the case at bar, Plaintiff did not, nor was he required to, enter those areas of the Mall that appeared to be inaccessible. As Parr holds

> "Plaintiff has standing to allege ADA violations in which he did not encounter, as long as Plaintiff is "among the injured"... [t]he legal interest at stake is Plaintiff's right to patronize L & L free from discrimination. The discrimination occurred as soon as Plaintiff encountered an architectural barrier. Plaintiff should not be required to encounter every barrier seriatim within L & L to obtain effective relief...There is a likelihood of future injury as to the barriers previously encountered and the barriers that were not previously encountered, so long as the barriers deny access on account of Plaintiff's disability. When Plaintiff returns, all related barriers that still exist would constitute reinjury. Plaintiff would clearly have a personal stake in the outcome because any injunctive relief would redress said injury."

Under Parr, Plaintiff is not required to list all specific barriers to access in its Complaint and should be permitted to litigate those barriers to access. Plaintiff's Amended Complaint does list certain barriers to access but also says in paragraph 17 that the list of violations is not limited to the violations listed. At paragraph 18 of the Amended Complaint, Plaintiff states "[t]he discriminatory violations described... are not an exclusive list of the defendant's ADA violations. Plaintiffs require the inspection of the defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access."

In addition, in Resnick that Court held that because Defendant stated he remedied all of the barriers to access enumerated in Plaintiffs' complaint with the aid of an ADA specialist, there

was no indication that Defendant intends to violate the ADA. While Plaintiff does not entirely

agree with this holding, Plaintiff nevertheless contends that the Defendant in the case at bar has

not remedied any of the barriers to access and has in fact, tried to delay inspections (this is

Defendant's second Motion for Protective Order from a Rule 34 Inspection) and any progress to

remove barriers to access.

　　　6. **Inspection should include women's restrooms.** Defendant claims on p. 7 of its

Motion that "... as a male, Plaintiff lacks standing to complain of any potential ADA violation in

women's bathrooms" and that the inspection request is too broad in scope. Plaintiff respectfully

disagrees. In Steger v. Franco, Inc., 228 F.3d 889 (8th Cir. 2000), the Court held that a blind

individual had standing to seek ADA compliance with respect to barriers, he did not personally

encounter, that affect blind persons. See also Pickern v. Best Western, 2002 WL 202442 (E.D.

Cal. 2002); Independent Living Resources v. Oregon Arena Corp., 982 F.Supp. 698, 762

(D.Or.1997) The Steger Court stated:

> Burch need not encounter all of these barriers to obtain effective relief. See, e.g.,
> *Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 762
> (D.Or.1997)...The effect of such a rule would be piecemeal compliance. To
> compel a buildings's ADA compliance, numerous blind plaintiffs, each injured by
> a different barrier, would have to seek injunctive relief as to the particular barrier
> encountered until all barriers had been removed.  This not only would be
> inefficient, but impractical...Hence our analysis of Title III standing, informed by
> the ADA's language and policy, leads us to conclude that Burch has standing to
> seek relief for any ADA violations in the CCB affecting his specific disability.(*Id.*,
> at 894)

　　　In the case at bar, the Plaintiff is a disabled person who uses a wheelchair for mobility.

Although he did not personally encounter barriers to access to the female restrooms, other

disabled individuals in wheelchairs will certainly encounter those barriers. It would be inefficient

and impractical to fix any violations to the men's restrooms, but not the women's restrooms,

because that could result in future suits by disabled females in wheelchairs seeking to access the women's restrooms at Defendant's Mall. As in Steger, the Plaintiff should have standing to complain about and seek compliance with all violations that can injure other disabled persons in wheelchairs. As such, Plaintiff should be permitted to inspect those restrooms.

7. **Inspection is quick and not unduly burdensome on Defendant.** The Inspection is being conducted so that Plaintiff's expert has the full opportunity to examine Defendant's premises and take photographs and measurements to support any conclusions.  Because most retail establishments do not have bathrooms or eating facilities, the inspection requires a quick but thorough walk through of the establishment and measuring of minimal areas.  Considering these retail establishments have hundreds of people walking through their shops all day long, certainly an inspector walking through for a minimal time period should not be burdensome to the retail establishment of the Defendant. Further, no harm exists for the Plaintiff's expert to be able to conduct a Rule 34 Inspection, especially when the date and time for the Rule 34 Inspection will be arranged several weeks in advance with Defendant's counsel.

WHEREFORE, Plaintiff respectfully urges the Court not to grant a Protective Order barring Plaintiff's expert from proceeding to conduct the Rule 34 Inspection arranged by the parties several weeks ago.

Respectfully submitted,

**FULLER, FULLER & ASSOCIATES, P.A.**
*Attorneys for Plaintiffs*
12000 Biscayne Boulevard, Suite 609
North Miami, Florida 33181
Te: (305) 891-5199

Fax: (305) 893-9505

/s/ John P. Fuller
John P. Fuller, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-mailed on June 7,

2005 to:

Jennifer Martin Foster, Esq. (BBO #644796)
Greenberg Traurig LLP
One International Place
Boston, MA 02110
FosterJe@GTLaw.com
Tel: (617)310-6000
Fax: (617)310-6001

Brian C. Blair, Esq.
Greenberg Traurig, P.A.
450 S. Orange Avenue, Ste. 650
Orlando, FL 32801

/s/ John P. Fuller
John P. Fuller, Esq.

3602/Plaintiff's Response to Def's Motion Prot Order 2(6-7-05).wpd

-10-