UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE IVERSON, Individually,  )  <br>     Plaintiff,   ) <br>                             ) <br>    v.   ) <br>                             ) <br> BRAINTREE PROPERTY ASSOCIATES,   ) <br> L.P.,    ) <br>     Defendant.   ) | Civ. Action No. 04cv12079-NG |

GERTNER, D.J.

**MEMORANDUM AND ORDER RE: ATTORNEYS' FEES**
February 26, 2008

    Plaintiff George Iverson ("Iverson") brings this case under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq. The defendant is Braintree Property Associates, L.P. ("Braintree"), a Massachusetts limited partnership, which owns, operates, or leases the property known as South Shore Plaza ("South Shore"), a shopping complex in Braintree, Massachusetts. South Shore is a place of public accommodation as defined in the ADA.

    The complaint was filed on September 27, 2004. A little over a year later, on January 19, 2006, it was reported settled. I entered a settlement order of dismissal and requested additional briefing on the amount of attorneys' fees to be awarded; whether the Court should retain jurisdiction over the settlement agreement; and the application of <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598 (2001).

I.  **INTRODUCTION**

Braintree concedes that Iverson is the prevailing party in this case and that reasonable fees are due and owing; it only contests the amount of the award. Iverson seeks a total award of $75,030.59, which includes $57,328.59 in legal fees to Fuller, Fuller & Associates, P.A.; $11,475.00 in expert fees; $2,297.00 for expert costs; and $3,930.00 for expenses incurred by the plaintiff.[1] Braintree argues that the amount should be substantially less: $7,470.00 for legal fees; $2,805.00 for experts; and $1,543.55 for a total of $11,818.55. It is hard to imagine positions that are more opposite than the positions taken by the parties in this case.

Iverson's counsel touts their extraordinary expertise in this area of the law to justify an hourly rate of $325.00 for the lead attorneys John Fuller and Lawrence Fuller, who have been practicing attorneys for more than twenty-five years. Iverson requests the same rate for O. Oliver Wragg, who has been a practicing litigation attorney for fourteen years, with a special focus on disability law for more than ten years. Tracie Dickerson has four years of ADA experience and $240.00 per hour is requested for her.

---

[1] The Court notes that the plaintiff's filings contain several mathematical errors -- some minor and others not so minor -- and has taken care to double-check all of the relevant figures. Counsel should take greater care in the future.

-2-

In addition, Iverson quite rightly reminds the Court of the importance of this litigation. The ADA, like all civil rights laws, is largely enforced through the efforts of private counsel. Private counsel function as private attorneys general litigating on behalf of the public, as well as the individuals they represent. Their efforts comprise the principal means by which these crucial laws are implemented.[2]

Iverson further represents that the case required an expenditure of an extensive amount of time because of Braintree's tactics. He has provided an outline of the time that the litigation involved. To be sure, this was not in-court work; there were hardly any court appearances. Rather, Iverson contends, there was negotiation, investigation, and discovery.

Braintree tells a diametrically opposed story. The case, according to Braintree, is a simple one: after Iverson filed his complaint, the parties conducted an inspection of the property and entered into a settlement agreement to remove barriers to access at South Shore. It was not hotly contested or heavily negotiated. Iverson's complaint was formulaic and, in fact,

---

[2] Title III authorizes the Attorney General to file a civil action when discrimination raises an issue of "general public importance" or when reasonable cause exists to believe that a person "is engaged in a pattern or practice of discrimination." § 12188(b)(1)(B). The Department of Justice, however, is often overwhelmed with these cases; the backlog can be substantial. See Ann C. Hodges, Mediation and the Americans with Disabilities Act, 30 Ga. L. Rev. 431, 451 (1996). Mediation is central to addressing that backlog. Id. at 459-60.

Braintree contends, strikingly similar to a number of other cases filed by Iverson's counsel in this district.

Indeed, from the outset, Braintree sought to minimize its exposure to excessive attorneys' fees and costs by agreeing to an inspection of the relevant premises and entering into a settlement agreement as soon as it could, rather than engage in protracted litigation. It contends that $75,030.59 in attorneys' fees, expert fees, and litigation expenses and costs is excessive, and that a substantially smaller number is required, namely $11,818.55.

## II.   DISCUSSION

### A.   Legal Standard

Under 42 U.S.C. § 12205, the Court may award attorneys' fees and litigation costs to the prevailing party in an ADA case.[3] Any attorneys' fees awarded must be reasonable. § 12205. As the Supreme Court noted in Hensley v. Eckerhart, 461 U.S. 424 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433; Disabled Patriots of Am. v. Taylor Inn Enters., Inc., 424 F. Supp. 2d 962, 965 (E.D. Mich. 2006). This is known as the "lodestar" approach. See Taylor Inn, 424 F. Supp. 2d at 965.

---

[3] The issue of whether Iverson is the prevailing party here is addressed below.

Once the lodestar is calculated, the fee may be adjusted in consideration of a number of factors, including 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and, 12) awards in similar cases.  See Doran v. Corte Madera Inn Best Western, 360 F. Supp. 2d. 1057, 1061 (N.D. Cal. 2005) (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

    B.    **Hourly Rate**

In determining a reasonable hourly rate, the Court looks to the relevant marketplace.  See Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir. 2007); Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 47 (1st Cir. 2007).  In the present case, attorneys Lawrence Fuller and John Fuller (out-of-town counsel) and O. Oliver Wragg are seasoned litigators with experience in ADA cases.  They seek an hourly rate of $325.00.  Braintree argues that the rate is excessive, pointing to other cases in which the

same attorneys' rates have been reduced.  See, e.g., <u>Disabled Patriots of Am., Inc. v. HT West End, LLC</u>, 2007 WL 789014, at *3 (N.D. Ga. Mar. 14, 2007) (awarding John and Lawrence Fuller $250.00 an hour and Mr. Wragg $200.00 an hour); <u>Access 4 All, Inc. v. Grandview Hotel, LP</u>, 2006 WL 566101, at *4 (E.D.N.Y. Mar. 3, 2006); <u>see also</u> <u>Brother v. Miami Hotel Invs. Ltd.</u>, 341 F. Supp. 2d 1230, 1235 (S.D. Fla. 2004).

I strongly disagree with the defendant.  Rather, I adopt the reasoning of District Court for the Eastern District of Michigan, which ratified an hourly rate of $300.00 for the Fullers in <u>Taylor Inn</u>.  424 F. Supp. 2d at 966 (citing cases in which the Fullers received an hourly rate of $325.00).  In my judgment, and based on the rates in this market, the rate of $325.00 an hour for John Fuller, Lawrence Fuller, and O. Oliver Wragg is entirely reasonable.  To find otherwise would be to disparage counsel's considerable expertise in this important field and the public contribution it reflects.

In addition, Iverson seeks $240.00 an hour for associate attorney Tracie Dickerson and over $110.00 for unidentified paralegal time.  Ms. Dickerson's rate of $240.00 an hour was found not to be reasonable in <u>Taylor Inn</u>, again, with reference to the market in which the case took place.  424 F. Supp. 2d at 966.  The court there found that $240.00 an hour for an attorney who had been a member of the bar for less than two years was

high, and I agree.  Id.  And as in Taylor Inn, I find that $150.00 per hour is a reasonable rate for Ms. Dickerson's work on this case.  Paralegal rates should also be reduced accordingly to $75.00 an hour.

### C.  Hours Expended

The problem here is with the hours claimed by counsel. Iverson claims that his counsel expended 183.6 hours litigating this case: 121.7 hours on the part of John Fuller;[4] 30 hours on the part of Lawrence Fuller; 3.4 hours on the part of O. Oliver Wragg; 26.4 hours on the part of Tracie Dickerson; and 2.1 hours of paralegal time.  Braintree vigorously opposes the award of fees for that amount of time.  It further notes that a court "has a right – indeed, a duty – to see whether counsel substantially exceeded the bounds of reasonable effort." Guckenberger v. Boston Univ., 8 F. Supp. 2d 91, 99-100 (D. Mass. 1998) (quoting United States v. Metro. Dist. Comm'n, 847 F.2d 12, 17 (1st Cir. 1988)).

My analysis of the time spent by the Fullers on this case again dovetails with the analysis in Taylor Inn.  Just as I credit the Fullers' substantial experience in litigating ADA cases in determining their hourly fee, I also consider that

---

[4] This figure includes the 98.3 hours included in counsel's first application for fees, and 23.4 additional hours included in counsel's two supplemental applications.

experience here: Their obvious familiarity with similar cases suggests that they would "be able to prosecute this fairly routine ADA case with a considerably lower expenditure of time than would a rookie." <u>Taylor Inn</u>, 424 F. Supp. 2d at 967. As the Court noted in <u>Brother</u>, "[i]f [plaintiff's counsel] is as good as he says he is, he should have been able to litigate this unexceptional case by utilizing the formulaic approach that served him so well in all the similar cases he handled."[5] 341 F. Supp. 2d at 1236.

In addition, Braintree has made a careful analysis of the time spent by plaintiff's counsel, identifying which expenditures were excessive and which were not. I agree with Braintree that the amount of time plaintiff's counsel spent litigating this case was unreasonable, with one exception. I disagree with Braintree's argument that plaintiff's counsel should not recover fees for litigating the issue of attorneys' fees. That work was done in response to the Court's inquiries and should be compensated. I therefore adopt the methodology set forth in <u>Taylor Inn</u>. There, the court reduced the total fees for all counsel by 40%. <u>Taylor Inn</u>, 424 F. Supp. 2d at 969. And while

---

[5] Braintree also points to the number of cases filed by the same plaintiff in this jurisdiction. Counsel have filed nine cases in this jurisdiction on behalf of Mr. Iverson. I am not impressed by this argument. If the ADA were enforced directly by the government, as are, for example, the fair housing laws, it is likely that government lawyers would have reached out to disabled individuals -- "testers" as they are called -- to find out which businesses were complying and which were not. Mr. Iverson has functioned here as a "tester," which is entirely appropriate.

the court found that the plaintiff was entitled to compensation for attorney time relating to the preparation and litigation of the question of attorneys' fees, it discounted that amount as well. I will do the same, although in order to check the appropriateness of that discount, I will also consider the usual lodestar methodology.

For John Fuller, who expended 121.7 hours[6] at an hourly rate of $325.00, equaling $39,552.50, I will reduce the amount by 40%, yielding $23,731.50. For Lawrence Fuller, who expended 30 hours at $325.00 an hour, equaling $9,750, I will reduce the amount by 40%, yielding $5,850.00. And for O. Oliver Wragg, who expended 3.4 hours at $325.00 an hour, equaling $1,105.00, I will reduce the amount by 40%, yielding $663.00.

Tracie Dickerson involves a different challenge. Counsel for Braintree reports that Ms. Dickerson was neither admitted pro hac vice nor admitted to the District of Massachusetts. Her 26.4 hours at $150.00 an hour would entitle her to $3,960.00. I will discount that amount by half, because for all intents and purposes, without having been admitted pro hac vice, she was only able to work as a researcher in the office rather than appear in

---

[6] This figure represents the hours included in the initial application as well as both supplemental applications.

court or sign pleadings.[7]  That amount is $1,980.00.  Paralegals will be billed at $75.00 an hour for 2.10 hours, or $157.50.

While I understand both the degree of success involved in this case and the significance of plaintiff's counsel taking these cases, it ought not be an occasion for running up a bill or for giving plaintiff's counsel, rather than the public, a windfall.  As such, I conclude that the total arrived at here -- $32,382.00 -- is an accurate reflection of the time reasonably expended in litigating the case before the Court.[8]

**D.    Costs**

With respect to costs, Braintree challenges the initial amount requested -- $3,004.87 -- by alleging that there was no indication that the costs were used for this particular case, either costs for copies, shipping, postage, long distance phone

---

[7] Plaintiff's counsel's last-minute effort to circumvent this result is to no avail.  The fact remains that throughout the course of this litigation, Ms. Dickerson was not admitted to practice before this Court.

[8] The result would be roughly the same were I to fully adopt Braintree's suggestion as to hours reasonably expended and multiplied those hours by the lodestar figure.  I agree with Braintree that counsel fees should be reduced for time entries that are vague or imprecise, making it impossible for Braintree or the Court to determine if the time spent on the activity was reasonable.  The imprecision is especially telling in a case like this, where the Court cannot evaluate the work that counsel did based on the public docket since the case was settled almost immediately.  Plaintiff's counsel's entries that are "block billed," lumping multiple tasks into a single entry, are inadequate for the same reason.  Also, fees should be reduced for clerical work performed by the firm's senior partners, such as researching on the Secretary of State's website to ascertain the owner of the mall, cancelling and scheduling meetings, and checking PACER for the status of the case.  Finally, I also agree with the defendant that travel was unnecessary under the circumstances.  Iverson failed to prove that a local attorney could not be secured with the same qualifications.  I have worked as counsel in this area; I know how well-qualified local counsel can be.

charges, a pro hac vice motion, which was not submitted, etc.  I accept the defendant's account of the illegitimacy of those costs and will award $1,543.55 as it suggests.

Iverson's counsel also requests additional costs in the amount of $925.77 in conjunction with litigating the issue of attorneys' fees.  Those costs consist of 1,480 photocopies at a cost of $0.45 per copy and $239.77 in shipping fees, for a total of $925.77.  The Court finds the photocopying charges to be excessive and will recalculate the costs at $0.10 per copy, for total costs awarded of $1,931.32.

**E.   Experts**

Braintree also challenges the block-billed fees associated with plaintiff's expert, ADAhelp, Inc. ("ADAhelp").  Iverson admits that his expert has billed for travel time and costs for an inspection that never took place.  However, due to the block billing problem, it is not possible to ascertain which amounts should be excluded.  The defendant should not have to be the one to bear the cost of this uncertainty.  Iverson has also failed to demonstrate that there was no local expert he could have obtained at a lower cost.  Moreover, Braintree contests ADAhelp's $225.00 per hour rate, challenging the professional qualifications of ADAhelp's employees Bill Narkunas and John Smith.  I agree with Braintree.

Thus, ADAhelp's fees for the 51 hours expended on this case are reduced to $100.00 per hour, for a total of $5,100.00.

### F. Retaining Jurisdiction

Counsel for the plaintiff seeks to have this Court retain jurisdiction over the settlement agreement. In the ordinary course, there would be no need to do so in order to enforce the settlement agreement between the parties. A private settlement agreement is enforceable in state court regardless of whether or not the District of Massachusetts has retained jurisdiction.[9]

The only reason Iverson seeks to have this Court retain jurisdiction is to preserve his right to attorneys' fees. I do not mean to demean that concern. Counsel is absolutely entitled to the fees I have described. Absent an award of attorneys' fees by this Court (or an agreement between the parties) there is no way that he and his firm can be compensated. Indeed, under Title

---

[9] To be sure, the Settlement Agreement contains the following language: "It is expressly understood that this Settlement Agreement is subject to the Court retaining jurisdiction to enforce its terms and conditions." (Settlement Agreement 5 (document # 25) (under seal).) As a result of this clause, plaintiff argues that the agreement is contingent upon the Court retaining jurisdiction; if the Court declines to do so, the rest of the agreement will be unenforceable.

The provision is surely not necessary for the defendants; they have remained mute on the subject of the necessity for the Court to retain jurisdiction (see below). It is only necessary for plaintiff's counsel because he believes that this provision is essential for him to receive the fees I have found fairly due. As I describe below, I do not agree. First, as I noted, the defendant has effectively waived its right to appeal on the issue of whether Iverson is properly considered the prevailing party. Second, the parties could adopt the Court's fee order as part of its agreement, just as if a mediator had suggested it rather than a Court.

III of the ADA, damages are not available.  See Goodwin v. C.N.J., Inc., 436 F.3d 44, 50-51 (1st Cir. 2006).

Iverson interprets Buckhannon as requiring that the settlement agreement be subject to the Court's ongoing jurisdiction (a "retain jurisdiction" clause) or else plaintiff's counsel goes uncompensated.  There are reasons, both legal and practical, why this should not be so under the circumstances of the case before me.

As an initial matter, there is a practical issue:  Whatever the legal status of the claim, it is clear that the defendant in this case has waived all objections to Iverson's entitlement to attorneys' fees as a prevailing party and thus all objections under Buckhannon.  In response to this Court's request for briefing on the Buckhannon question, the defendant indicated that "Braintree and its counsel have not raised any of the issues and do not believe any issues exist with respect to the matters raised by Plaintiff or his counsel . . . Braintree does not contest Plaintiff counsel's entitlement to a reasonable fee, nor has it ever contested same.  Given Braintree's agreement to Plaintiff's counsel's entitlement to a reasonable fee, it is unaware of any issues under Buckhannon . . . and its progeny that would preclude Plaintiff's counsel from recovering reasonable and proper attorneys' fees, expert fees, and costs."  (Document # 24.)  Braintree added, "Braintree does not request the court to

-13-

retain jurisdiction and alternatively does not object if the court wants to retain jurisdiction. The issue was raised solely by Plaintiff's counsel." (Id.)

In any event, I will not retain jurisdiction for the purposes of enforcing this settlement agreement in this case. It cannot be that in order to give counsel his due I have to distort this Court's oversight responsibilities.[10]

---

[10] I do not believe that Buckhannon requires such a result. In Buckhannon, shortly after the plaintiff filed suit, the West Virginia legislature enacted legislation eliminating certain requirements being challenged by the plaintiff. 532 U.S. at 601. The plaintiff then claimed its suit was a "catalyst" for that change and sought attorneys' fees under the fee-shifting provisions of the Fair Housing Amendment Act ("FHAA") and the ADA. Id. However, the problem with the "catalyst" argument, the Supreme Court found, was that plaintiff lacked the means of enforcing the legislature's change of heart. Id. at 605. In the next legislative session for example, the change effected by the "catalyst" plaintiff could have been undone. Thus, the Court held that the plaintiff who brought the FHAA and ADA actions could not obtain prevailing party status for the purpose of being awarded attorneys' fees. Id. at 610.

But the rule of Buckhannon should not apply where parties have reached a settlement agreement. In that instance, there is a material alteration in the relationship of the parties: namely, a contract, enforceable in court. The defendant cannot change its mind without legal consequences. That the plaintiff does not need the Court's intervention to effect that change should not put attorneys' fees out of reach. Moreover, unlike Buckhannon, there is no threat of a "second major litigation" requiring an "analysis of defendant's subjective motivations in changing its conduct" in this case. Id. at 609.

I recognize that dictum in Buckhannon suggests otherwise -- that a plaintiff "prevails" only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree. Id. at 605. The Court also indicated, this time in a footnote, that a private settlement agreement lacks the necessary "judicial approval and oversight involved in consent decrees" that would support an award of attorneys' fees or a "prevailing party" designation. Id. at 604 n7; cf. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381-82 (1994) (district courts do not possess inherent ancillary jurisdiction to enforce private settlements, but may incorporate terms of settlement into order of dismissal). (It should be noted that in Buckhannon, the Court itself cautioned against over-reliance on dicta. 532 U.S. at 605.)

Taking this dicta, the First Circuit, as well as other circuits, have ruled that certain private settlement agreements are not sufficient to trigger attorneys' fees. See Doe v. Boston Pub. Sch., 358 F.3d 20, 29-30 (1st Cir. 2004); Smith v. Fitchburg Pub. Sch., 401 F.3d 16, 27 (1st Cir. 2005). But the

"Retaining jurisdiction" in the case at bar would distort this Court's role in civil litigation for the following reasons:

> 1. The parties want this agreement to be confidential. Indeed, the settlement agreement is contingent on that provision. To "retain jurisdiction" here means that public resources will be expended to enforce a confidential civil agreement.
>
> 2. Nothing -- and I mean nothing -- has been litigated before me (except for the issue of attorneys' fees). I have

---

concerns raised in this case -- in particular, the practical impact of the Buckhannon dicta on the allocation of scarce judicial resources at the district court level -- were not mentioned. In Doe, the court took "no position on whether forms of judicial imprimatur other than a judgment on the merits or a court-ordered consent decree may suffice to ground an award of attorneys' fees." 358 F.3d at 24 n.4. And in Smith, the court again reserved on the question of whether resolution other than via a consent decree or a judgment would suffice. 401 F.3d at 23. The court added:

> Lastly, we need not rule out the possibility that an egregious case of foot-dragging terminated by a judicial or quasi-judicial procedural order may be sufficient to confer prevailing party status under Buckhannon, because the record does not reveal that Fitchburg was being willfully obstructionist . . .

Id. at 26. That the court left open the possibility that such a procedural order might confer prevailing party status suggests that the question does not turn solely on the retention of jurisdiction to enforce the terms of an agreement.

I have read the settlement agreement in this case, which on its face should be fully enforceable (assuming that it is not contingent of the "retaining jurisdiction" provision). I have carefully considered the attorneys' fees question, which required an even more in-depth review of what was done in this case. This should be judicial imprimatur enough.

As such, it would make no sense for the Court to eliminate the possibility of attorneys' fees in private disputes, forcing lawyers to quickly seek preliminary injunctions (so that they have a judicial decision) rather than give defendants time to correct the structural defects or else unnecessarily burden the courts which have "retained jurisdiction" over private agreements with enforcement responsibilities.

Moreover, the ADA, unlike other civil rights statutes, has no damages provision. § 12188(a). Fee-shifting mechanisms provide the necessary incentive for counsel to bring these important cases; they are simply the only way for a plaintiff's counsel to recover. District courts should not be required to expend precious judicial resources "retaining jurisdiction" solely to ensure the continuing effectiveness of this congressionally constructed incentive.

not been asked to rule on the bona fides of the agreement, and even if I were, I have no basis on which to do so.

Whatever the interpretation of Buckhannon, and notwithstanding my conclusion that the defendant has completely waived any arguments with respect to it, the circumstances of this case militate against this Court retaining jurisdiction.[11]

### III. CONCLUSION

In sum, the Court awards the plaintiff a total of Thirty-Nine Thousand, Four Hundred Thirteen And 32/100 ($39,413.32) Dollars, representing attorneys' fees in the amount of $32,382.00; costs in the amount of $1,931.32; and expert fees in the amount of $5,100.00.  The Court, however, declines to retain jurisdiction over the settlement agreement.

**SO ORDERED.**

**Date:   February 26, 2008**         /s/ Nancy Gertner
                                      **NANCY GERTNER, U.S.D.C.**

---

[11] In fact, what counsel for the plaintiff asks the Court to do dramatically reflects a phenomenon identified by Professor Judith Resnik. According to Resnik, the prevalence of consent decrees -- in which judges in effect delegate official power to the negotiators before the bench -- represents yet another situation in which the formal process of adjudication becomes subordinated to the process of bargaining that surrounds it.  See Judith Resnik, Judging Consent, 1987 U. Chi. Legal F. 43 (1987).  Bargaining should take place in the shadow of the law, not vice versa.